

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-14-00140-CV

In the **INTEREST OF A.R.P., J.M.H., & T.A.H.**, Children

From the 81st Judicial District Court, Atascosa County, Texas
Trial Court No. 13-01-0023-CVA
Honorable Thomas F. Lee, Judge Presiding

Opinion by:     Sandee Bryan Marion, Justice

Sitting:         Sandee Bryan Marion, Justice
                 Marialyn Barnard, Justice
                 Patricia O. Alvarez, Justice

Delivered and Filed:  July 30, 2014

AFFIRMED

This is an accelerated appeal from an order terminating Sondra H.'s parental rights to A.R.P., J.M.H., and T.A.H.; and Marc H.'s parental rights to J.M.H. and T.A.H.[1]  The trial court determined Sondra and Marc violated subsections (D), (E), and (O) of section 161.001(1) of the Texas Family Code, and that termination was in the best interest of the children pursuant to section 161.001(2).  On appeal, Sondra and Marc (hereinafter "the parents") challenge only the legal and factual sufficiency of the evidence in support of the trial court's finding that termination was in the children's best interest.  We affirm.

---

[1] Sondra is the mother of A.R.P., J.M.H., and T.A.H.  Marc is the father of J.M.H. and T.A.H.

**STANDARD OF REVIEW**

A court may terminate parental rights only upon proof of clear and convincing evidence that the parent has committed an act prohibited by section 161.001(1) of the Texas Family Code, and that termination is in the best interest of the child. TEX. FAMILY CODE ANN. § 161.001(1), (2) (West 2014). Clear and convincing evidence is "proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *Id*. § 101.007.

When conducting a legal sufficiency review in a parental rights termination case, we consider "all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005) (quoting *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002)). We give deference to the fact finder's conclusions and presume the fact finder resolved any disputed facts in favor of its finding, so long as a reasonable fact finder could do so. *Id.* We disregard any evidence that a reasonable fact finder could have disbelieved, or found to have been incredible, but we do not disregard undisputed facts. *Id*. Credibility issues are generally determined by the fact finder and we are not permitted to weigh credibility issues that depend on the appearance and demeanor of witnesses. *Id*. at 573–74.

When conducting a factual sufficiency review in a parental rights termination case, we give due deference to the fact finder's findings and must refrain from substituting our judgment for that of the fact finder. *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006). "If, in light of the entire record, the disputed evidence that a reasonable fact finder could not have credited in favor of the finding is so significant that a fact finder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *In re J.F.C.*, 96 S.W.3d at 266.

**DISCUSSION**

On appeal, the parents do not challenge the trial court's finding that they violated subsections (D), (E), and (O) of section 161.001(1). Therefore, we focus our review of the evidence as it pertains to the trial court's best interest finding.

There is a strong presumption that maintaining the parent-child relationship is in the child's best interest. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006). There is also a presumption that "the prompt and permanent placement of the child in a safe environment is presumed to be in the child's best interest." TEX. FAM. CODE § 263.307(a). In determining whether termination of parental rights is in the child's best interest, courts may apply the non-exhaustive *Holley* factors to shape their analysis. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976); *In re E.D.*, 419 S.W.3d 615, 618 (Tex. App.—San Antonio 2013, pet. denied). These include, but are not limited to: (1) the desires of the child, (2) the present and future physical and emotional needs of the child, (3) the present and future emotional and physical danger to the child, (4) the parental abilities of the persons seeking custody, (5) the programs available to assist those persons seeking custody in promoting the best interest of the child, (6) the plans for the child by the individuals or agency seeking custody, (7) the stability of the home or proposed placement, (8) acts or omissions of the parent which may indicate the existing parent-child relationship is not appropriate, and (9) any excuse for the parent's acts or omissions. *Holley*, 544 S.W.2d at 371–72. Evidence of every factor need not be proven to find that termination is in the child's best interest. *See In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2002).

The Texas Department of Family and Protective Services ("the Department") became involved in this case after it received a referral for parental drug use and negligent supervision. The referral alleged the parents previously used, and were currently using, methamphetamine in their house with the children present. The Department contacted the parents and interviewed

Sondra. During the interview, Sondra agreed to submit to a drug test and tested positive for methamphetamine. A search of the parents' residence uncovered a "meth pipe" with methamphetamine residue as well as a handgun, which Marc was not allowed to possess due to his convicted felon status. As a result, the children were placed in foster care, and the Department created a Family Service Plan with the goal of family reunification within one year. The Department ultimately brought suit to terminate parental rights due to the parents' continued drug use, dishonest conduct, and uncooperative actions. The trial court held termination hearings on January 9, 2014, and February 7, 2014. At the time of the hearings, A.R.P. was fourteen–years-old, J.M.H. was six-years-old, and T.A.H. was five-years-old.

Grace Friesenhahn-Soliz, the parents' therapist, recommended the children not be returned to the parents. Friesenhahn-Soliz testified she had concerns regarding the parents' instability caused by their continued drug use, lack of stable employment, and lack of stable housing. She was also concerned about Marc's anger management issues, inability to control his emotions, and impulse control issues. She testified Marc exhibited erratic behavior, such as sending her text messages during the middle of the night and telling her "something about being like all other CPS idiots." She further testified the parents lacked a sufficient support system and that returning the children to the parents would endanger them. Friesenhahn-Soliz stated the parents failed to complete their counseling program, but acknowledged this may have been caused by a miscommunication. She stated she had concerns that have not been resolved and does not believe it is in the children's best interest to be returned to the parents.

The parents also testified and admitted to using methamphetamine from August 2012 through November 2013. Sondra confirmed police found a "meth pipe" and a handgun during a search of their home. However, she testified the handgun did not belong to them because Marc is a convicted felon and is not allowed to possess a firearm. She also confirmed the

methamphetamine use began prior to the Department's involvement and continued after the children were removed from the home. Sondra acknowledged she and Marc separated for approximately three months during the course of the Department's investigation and denied Marc was physically abusive. Sondra stated the family has lived in six different residences within the previous three years, and that Marc has had four to five different employers over the previous two years. When asked about a support system, Sondra referred to her mother as a "crackhead," but stated she has a sister, Linda, who is dependable.

The parents acknowledged they failed five drug tests during the time the Department was investigating the allegations; however, both parents claimed the Department conspired against them by tampering with the results. Marc acknowledged he spent money purchasing methamphetamine and did not pay child support to the Department. Marc testified the Department did not tell him that he was required to pay child support while the children were in foster care. Although he failed to pay child support to the Department, Marc stated he gave money directly to the foster family caring for the children. He accused Friesenhahn-Soliz of lying during her testimony because he claims she told him therapy was complete. He also claimed the Department prevented him from maintaining stable employment because the Department communicated confidential information regarding his case to his employers. When asked whether he sent his brother an email stating he would kill himself if his parental rights were terminated, Marc stated his brother fabricated the email because his brother "is cruel and evil like that."

Patricia Davis counseled the children and supervised their visits with the parents. Davis testified the children desired to be reunited with their parents. Davis also testified that she was aware of the parents' prior drug history and saw no signs of drug use during the parents' visits with the children. She stated the visits went "very well," and that she did not perceive any significant issues. Davis said that termination of the parental rights would have a "drastic" effect

on the children. Initially, Davis recommended the children be "gradually" reunited with strict counseling and monitoring. She did not believe that immediate termination of parental rights was in the children's best interest, but wanted to extend the proceedings for an additional six to twelve months. Davis, however, was unaware the parents had tested positive for methamphetamine during the course of the Department's investigation when she made her initial recommendation. After learning of the parents' failed drug tests, she then recommended the proceedings continue for an additional two years. When asked if the children should be immediately reunited with the parents, Davis stated, "I couldn't say they should go home without some sort of monitoring of the children. I couldn't just throw them to the wolves. I couldn't do that." She also acknowledged that in her thirty years of experience, she has never recommended that parental rights be terminated. Later in the hearing, the trial court questioned Davis's understanding of the legal system stating, "[Davis] was asking for . . . impossible things under our legal structure."

Marie Spenrath, caseworker with the Department, testified she did not believe it was safe for the children to be returned to the parents based on the parents' continued drug use and the risks associated with such drug use. Spenrath testified the parents failed to provide income information and proof of employment. However, Spenrath confirmed Marc gave "a couple hundred dollars" directly to the children's foster family, but was unaware of the exact amount. She further testified Sondra had not completed substance abuse counseling nor successfully completed individual counseling. Additionally, neither parent had complied with the terms of the Family Service Plan by refraining from drug use, as both parents failed the most recent drug test administered on January 2, 2014, one week before the first termination hearing. Spenrath stated she believed both Sondra and Marc continued to use methamphetamine as evidenced by their failed drug tests. She acknowledged A.R.P wishes to return home, but believes that termination of the parental rights is

in the best interest of the children due to the parents' continued drug use, inability to support the children financially, and overall instability of the home.

Finally, the court heard from Carla Morrison, guardian ad litem for the children. Morrison stated she has concerns regarding the stability and safety of the parents' home. With respect to stability, Morrison cited the fact that the family has moved six times in the previous three years and noted that the children have had four placements during the pendency of this case alone. She was also concerned with Marc's lack of stable employment, having had five different employers in the previous two years. With respect to safety, Morrison stated she was most concerned with the parents' continued drug use, citing the failed drug tests throughout the course of the Department's investigation, along with the most recent failed drug test after the parents claimed to have stopped using methamphetamine. Morrison was also concerned with the fact that the parents refused to accept culpability for their actions. She noted the parents blamed their failed drug tests on the Department claiming the Department conspired against them, the parents blamed their failure to complete counseling on Friesenhahn-Soliz claiming she misled them, and that Marc accused his brother of fabricating emails. She was also concerned by the parents sending insulting and disparaging text messages to the foster family. With respect to the desires of the children, Morrison testified A.R.P. only wished to return home if there was no longer any drug use and desired only to return to her mother, stating that A.R.P. thought her mother was a much nicer person before she became involved with Marc. The trial court also noted A.R.P. previously stated, "I want to go home, but I don't want to go home if they're still using drugs." Morrison concluded that it was obvious the parents were still using drugs.

**CONCLUSION**

Based on our review of the record, we conclude there was clear and convincing evidence that termination of Sondra's and Marc's parental rights is in the children's best interest. Therefore, we affirm the trial court's order.

Sandee Bryan Marion, Justice